# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

LEHONOR BOCANGEL, et al.        *

    Plaintiffs,                  *

  v.                                        *     Civil Action No. 8:16-cv-03989-PX

                                      *

WARM HEART FAMILY
ASSISTANCE LIVING, INC., et al.   *

    Defendants.                  *

                   ***

## MEMORANDUM OPINION

Pending before the Court in this fair wage and hour case is Plaintiffs' Lehonor Bocangel, Flory Bocangel, and Dan Espinal's motion for partial summary judgment. ECF No. 91. Defendants have not responded and the time for doing so has passed. *See* Loc. R. 105.2. The Court finds that no hearing is necessary. *See* Loc. R. 105.6. For the reasons that follow, Plaintiffs' motion is granted.

### I.    Background[1]

Plaintiffs' motion concerns whether any evidence supports the inference that Plaintiffs are "independent contractors" exempt from federal and state labor laws. The Plaintiffs worked at Warm Heart Family Assistance Living, Inc. ("Warm Heart"), a group nursing home facility owned and operated by Defendant Constance M. Robinson. ECF No. 30 ¶¶ 2, 4, 42. Warm Heart operates three group nursing homes located in Germantown, Frederick, and Mount Airy, Maryland. *Id.* ¶ 36. The nursing homes provide long term, short term, and respite care to seniors and minors with disabilities who are over the age of thirteen. ECF No. 30 ¶ 48.

Plaintiffs Lehonor and Flory Bocangel worked as caregivers and "med techs" at the

---

[1] The following facts are either taken from evidence presented with Plaintiffs' motion or were admitted in Defendants' Answer and are viewed in the light most favorable to Defendants.

Germantown facility from between at least June 2009 through November 18, 2016. *Id.* ¶¶ 11, 19, 36, 42; ECF No. 91-2 at 2. Although the Bocangels' contracts with Warm Heart styled them as "independent contractor agreements," *see* ECF Nos. 30-1, 30-2, the record evidence belies this title. The Bocangels "assist[ed] residents with daily living activities such as dining, bathing, recreational, and housekeeping activities." ECF No. 91-2 at 2. They cooked and cleaned, bathed patients, answered phones, wrote down patient notes, and generally attended to the residents' daily needs. ECF No. 91-1 at 76:5–18. These duties comprised "the core things necessary to take care of . . . patients[,]" and the facility could not run without the Bocangels' assistance. ECF No. 91-1 at 82:6–20.

Warm Heart supplied all necessary equipment, supplies and job-related training to the Bocangels. ECF No. 91-1 at 76:19–77:12; *see* ECF No. 30-1 at 2–3; ECF No. 30-2 at 2–3; ECF No. 30-7 at 2–3. Moreover, aside from state-mandated CPR and first aid training, ECF No. 91-1 at 97:12–98:15, Robinson and Warm Heart nursing staff trained the Bocangels as caregivers, *id*. at 77:13–78:12. Although the Bocangels maintained state-issued med tech licenses, *id.* at 78:18–20, 81:15–17, Warm Heart neither required them to do so nor kept records of any such licenses, *id.* at 78:14–79:22, 81:12–14.

Defendants closely supervised the Bocangels. ECF No. 30 ¶¶ 37, 43. Defendant Robinson oversaw the entirety of Warm Heart's operations, to include patient care, marketing, and management of staff. ECF No. 91-1 at 11:9–16. Robinson and two Warm Heart nurses instructed the Bocangels on the provision of patient care. *Id.* at 74:10–22; ECF No. 91-2 at 2. Typically, when Robinson made "rounds" and looked at patient records, she would "correct" any of her caregivers' job performance as necessary. ECF No. 91-1 at 92:4–16. Plaintiffs were required to follow Robinson's instructions, and could be terminated if they failed to do so. *Id.* at

75:15–18, 92:20–93:8.

As compensation, the Bocangels received fixed salaries plus regular Christmas bonuses of either $100 cash or gifts such as winter jackets. *Id*. at 99:22–100:3, 101:21–103:10. "[W]arm Heart made an annual determination as to Plaintiffs' compensation based on the work load [sic] and needs of the location." ECF No. 30 ¶ 37, 43. Robinson never paid Plaintiffs less than their agreed-upon salary, and never gave them vacation days or paid sick leave. ECF No. 91-1 at 103:15–18.

On December 14, 2016, Plaintiffs filed this action against Defendants, asserting minimum wage and overtime claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* (2012) ("FLSA"), the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl., §§ 3-401 *et seq.* (2019) ("MWHL"), the Maryland Wage Payment Collection Law, MD. Code Ann., Lab & Emp., §§ 3-501 *et seq.* (2019) ("MWPCL"), and the Montgomery County Minimum Wage, Montgomery Cty. Code §§ 27-67 *et seq.* (2014) ("CMW"). *See* ECF No. 1. Plaintiffs allege that as covered employees, they were entitled to receive a statutory minimum wage and overtime pay for hours worked in excess of 40 per week, and that their fixed salaries resulted in routine underpayment in violation of the FLSA as well as companion state and local wage laws. *Id.* ¶ 5.

On January 17, 2017, Defendants answered the Complaint and brought two counterclaims for breach of contract and conversion of property. S*ee* ECF No. 4. Plaintiffs, in response, filed an Amended Complaint adding a retaliation count under the FLSA and MWHL. ECF No. 28 ¶¶ 96–101. In their Answer to the Amended Complaint, Defendants asserted the affirmative defense that Bocangels were exempt from the applicable labor laws because they were "independent contractors," not employees. ECF No. 30 ¶¶ 12–16, 20–24.

The parties proceeded to engage in discovery. However, on November 14, 2018, the Court granted defense counsel's motion to withdraw as to both Defendants, Robinson and Warm Heart. ECF No. 76. As to Warm Heart, the Court deferred entry of the order to allow the corporation, which cannot proceed pro se, to secure new counsel. ECF No. 77; *see also* Loc. R. 101.1(a). Because Warm Heart failed to secure counsel, the Court ordered it to show cause why default judgment should not be entered against it. ECF No. 86.[2]

In response, Plaintiffs moved for default judgment against Warm Heart on February 20, 2019. ECF No. 88. Because Plaintiffs' motion was received before the Clerk entered default pursuant to Federal Rule of Civil Procedure 55(a), the motion was construed as a request for the Clerk to enter default. *See* Loc. R. 108.2; ECF No. 90. Accordingly, the Clerk's entry of Default as to Warm Heart was issued on August 30, 2019, ECF No. 93. Plaintiffs never renewed their motion for default judgment as to Warm Heart.

Plaintiffs, however, did move for partial summary judgment against Warm Heart and Robinson. ECF No. 89. As to Robinson, the Clerk was required to issue "a Rule 12/56 notice" to inform her of her right to respond to the dispositive motion within the deadlines established under the Rules. Regrettably, the Clerk failed to issue the Rule 12/56 notice to Robinson. To rectify this oversight, the Court denied Plaintiffs' motion for summary judgment without prejudice and ordered the Clerk to issue a Rule 12/56 letter to Robinson. ECF No. 90.

The Clerk issued the Rule 12/56 notice on August 30, 2019 and re-docketed Plaintiffs' original motion for partial summary judgment. ECF Nos. 91, 92. Neither Warm Heart nor Robinson ever responded to the summary judgment motion which is now ripe for resolution.

---

[2] The Court issued two show cause orders (ECF Nos. 78, 83) that were inadvertently sent to an outdated address. On February 1, 2019, the Court issued a third order, which Plaintiffs served on Robinson. ECF No. 87 at 1.

4

## II. Standard of Review

Summary judgment is appropriate when the court, viewing the evidence in the light most favorable to the non-moving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Emmett v. Johnson,* 532 F.3d 291, 297 (4th Cir. 2008). A mere "scintilla of evidence" suggesting a material dispute cannot defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). Rather, the record evidence must demonstrate that a reasonable trier of fact could find in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [her] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex,* 477 U.S. at 322.

## III. Analysis

The pending motion concerns only the factual sufficiency of Defendants' independent contractor defense as to the Bocangels. The FLSA was enacted "to protect all covered workers from substandard wages and oppressive working hours." *Trejo v. Ryman Hosp. Props., Inc.*, 795 F.3d 442, 446 (4th Cir. 2015) (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728,

739 (1981)). The FLSA requires that "employees" receive a minimum wage as well as "overtime for each hour worked in excess of forty per week." *Schultz v. Capital Int'l Sec., Inc.*, 466 F.3d 298, 304 (4th Cir. 2006). "[B]ecause the Act is remedial and humanitarian in purpose, it should be broadly interpreted and applied to effectuate its goals." *Id.* (quoting *Tenn. Coal, Iron & R.R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944)). Broad interpretation notwithstanding, however, "[t]he requirements of the FLSA apply only to employees," and not to "independent contractor[s]." *Chao v. Mid-Atl. Installation Servs.*, 16 F. App'x 104, 105–06 (4th Cir. 2001).

To ascertain whether an individual is a covered employee as opposed to an independent contractor, courts employ the "economic reality" test—a functional inquiry that probes whether the individual worker is "economically dependent on the business to which [s]he renders service" or rather an independent contractor who is "as a matter of economic [reality], in business for [her]self[.]'" *Schultz*, 466 F.3d at 304–05; *Randolph v. PowerComm Constr., Inc.*, 309 F.R.D. 349, 356 (D. Md. 2015).[3] Although the economic reality test is governed by "the totality of the circumstances," *Randolph*, 309 F.R.D. at 356 (quoting *Herman v. Mid-Atlantic Installation Servs., Inc.*, 164 F. Supp. 2d 667, 671 (D. Md. 2000)), courts place particular emphasis on the six "*Silk* factors." *Schultz*, 466 F.3d at 304–05 (citing *United States v. Silk*, 331 U.S. 704 (1974)). The factors are:

> (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his

---

[3] While the FLSA supplies definitions of "employee" and "employer," these definitions are circular and "do little to solve problems as to the limits of the employer-employee relationship under the FLSA." *Chao*, 16 F. App'x at 105 (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728 (1947)); *see* 29 U.S.C. § 203(e)(1) (defining "employee" as "any individual employed by an employer"); 29 U.S.C. § 203(d) (defining "employer" as "any person acting directly or indirectly in the interest of an employer in relation to an employee").

6

employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business.

*Id.* at 304–05; *Randolph*, 309 F.R.D. at 356; *Herman*, 164 F. Supp. 2d at 671.

Although "[n]o single factor is dispositive," the Court must consider these factors together and as they "capture the economic realities of the relationship between the worker and the putative employer." *Schultz,* 466 F.3d at 305. "[T]he label that the parties give to their relationship is not controlling." *Butler v. PP&G, Inc.*, No. WMN-13-43, 2013 WL 4026983, at *4 (D. Md. Aug. 6, 2013) (internal quotation marks omitted) (quoting *Heath v. Perdue Farms, Inc.*, 87 F. Supp. 2d 452, 457 (D. Md. 2000)); *see also Herman*, 164 F. Supp. 2d at 671.[4]

Viewing the evidence in the light most favorable to Defendants, the Court finds that no reasonable trier of fact could conclude the Bocangels were independent contractors. The Court discusses each of the *Silk* factors as applicable to the record evidence.

### A. The Degree of Control Over the Work Performed

First, the record indisputably establishes that Robinson and Warm Heart directly supervised and controlled the Bocangels' employment. Employers tend to give their employees "specific direction for how . . . to perform their jobs," and to that end often set employees'

---

[4] The standards governing the FLSA's scope, including the economic reality test, apply to the MWHL and the MWPCL. Thus, as is often the case, Plaintiffs' state law claims "stand[] or fall[] on the success of the[ir] . . . claim under the FLSA." *Brown v. White's Ferry, Inc.*, 280 F.R.D. 238, 242 (D. Md. 2012) (quoting *Turner v. Human Genome Science, Inc.,* 292 F. Supp. 2d 738, 744 (D. Md. 2003)); *see McFeeley v. Jackson St. Entm't, LLC*, 47 F. Supp. 3d 260, 267 (D. Md. 2014) ("Courts analyze employee status under the MWHL using the same six-prong 'economic realities' test as the FLSA.") *aff'd* 825 F.3d 235 (4th Cir. 2016); *Hardison v. Healthcare Training Sols., LLC*, No. PWG-15-3287, 2017 WL 2276840, at *3 (D. Md. May 25, 2017) ("[T]he economic realities test applies to the MWPCL also."); *Macsherry v. Sparrows Point, LLC*, No. ELH-15-00022, 2015 WL 6460261, at *6–9 (D. Md. Oct. 23, 2015). As to the CMW, coverage is clearly meant to mirror that of federal and state law. *See* Montgomery County Minimum Wage, Montgomery Cty. Code § 27-67 ("*Employee* means any person permitted or instructed to work or be present by an employer . . . and who is an employee subject to the minimum wage requirements of the [FLSA] or the [MWHL]."); *id.* § 27-68(b)(1) ("The County minimum wage does not apply to an employee who . . . is exempt from the minimum wage requirements of the [MWHL] or [FLSA]."). Accordingly, the Court's analysis as to the viability of the independent contractor defense applies to all claims.

"schedules, direct[] them to particular work sites, require[] them to fill out time sheets, and can fire them at will." *Montoya v. S.C.C.P. Painting Contractors, Inc.*, 589 F. Supp. 2d 569, 579 (D. Md. 2008). *See* ECF No. 30 ¶ 43. Robinson decided when and at which facilities the Bocangels worked. She also oversaw Plaintiffs directly and gave them instructions on how to care for Warm Heart's patients. More particularly, Plaintiffs were not allowed to "do things differently" than instructed, and if they did, Robinson would take corrective action. ECF No. 91-1 at 75:15–18, 92:4–16. Ultimately, if the Bocangels refused to follow Robinson's instructions, they risked losing their jobs. Robinson herself confirmed that she wanted Plaintiffs "to do things [her] way because [she] wanted to run [her] facility [her] way." *Id.* at 75:19–22. No record evidence undermines that Warm Heart and Robinson controlled how the Bocangels performed their jobs.

### B. Opportunities for Profit or Loss Depending on Managerial Skill

Likewise, the record indisputably reflects that the Bocangels retained no opportunity for profit or loss that depended on their managerial abilities. Plaintiffs were paid a fixed salary, given predictable bonuses, and set schedule of 7:00 a.m. to 7:00 p.m. *Id.* at 99:22–100:3; ECF No. 91-2 at 3. According to Robinson, "Warm Heart made an annual determination as to Plaintiffs' compensation based on the workload and needs of the location," not Plaintiffs' managerial skill. ECF No. 30 ¶ 37. Additionally, while Robinson gave Plaintiffs two raises over the course of their employment, she did so because they had "done a good job," ECF No. 91-1 at 106:4–20, not because they assumed any management role. This second factor, therefore, undermines any independent contractor defense.

### C. Investment in Equipment, Material, or Labor

Next, no evidence supports that the Bocangels invested in any equipment, materials, or labor. "[L]ack of capital investment in equipment is perhaps one of the strongest indicators that

8

they are employees and not independent contractors." *Montoya*, 589 F. Supp. 2d at 580 (quoting *Heath*, 87 F. Supp. 2d at 458). Rather, Defendant Warm Heart provided all materials, equipment and supplies necessary for the Bocangels to do their jobs. *See* ECF No. 91-1 at 77:9–12; 76:14–22. This arrangement was by design, as the purported "independent contractor agreements" explicitly stated that "Warm Heart will provide various equipment and materials." ECF No. 30-1 at 2; ECF No. 30-2 at 2. No evidence reflects the contrary.

### D. Degree of Skill Required

The Bocangels' work also did not require a degree of skill that suggests they were in business for themselves. No doubt, certain of their job duties required specialized skill, particularly those pertaining to the administration of medication, CPR, and first aid. But even where some degree of skill is required "this observation cannot end the inquiry." *See Schultz*, 466 F.3d at 308 (finding that skill did not "tip[] significantly one way or the other" when job required a mix of skilled and unskilled work, and skilled work was "carefully scripted"). This is because the record also demonstrates that many of the Bocangels' primary duties amounted to unskilled or semi-skilled labor—cooking, cleaning, and physical assistance. ECF No. 91-2 at 2; s*ee Quinteros v. Sparkle Cleaning, Inc.*, No. AT-07-0628, 2010 WL 3000865, at *4 (D. Md. July 26, 2010) ("Services . . . such as cleaning are not considered to be labor which requires a high degree of skill or technical expertise."). And the record before the Court does not suggest that the Bocangels regularly administered skilled medical care, especially when Defendants did not require them to maintain med tech licenses. Accordingly, the Court does not find that the Bocangels' work was so skilled as to suggest that they were in business for themselves.

### E. Permanence of the Working Relationship

Nor did permanence of the parties' working relationship suggest that the Bocangels were

independent contractors. "The more permanent the relationship, the more likely the worker is to be an employee," *Schultz*, 466 F.3d at 309, especially when "the lack of permanence is due to the worker's own business initiative." *Randolph*, 309 F.R.D. at 359. Yet, by Robinson's own account, the Bocangels worked 40 hours per week for a six-year period. ECF No. 91-1 at 96:20–21; 91-2 at 2. While this employment relationship may have been at-will according to the independent contractor agreements, *see* ECF No. 30-1 at 3; ECF No. 30-2 at 3, the practical reality was that Defendants provided the Bocangels with a permanent, full time job that was intended to continue indefinitely. By contrast, no record evidence suggests that the Bocangels limited their tenure to pursue their own "business initiative[s]," *Randolph*, 309 F.R.D. at 359, or indeed that the Bocangels were anything less than permanent fixtures in the workplace. Thus, the permanence of the relationship cuts decisively against the independent contractor defense.

### F. Degree to Which Services Rendered Are Integral to The Business

Finally, it should be of no surprise that, as caregivers, the Bocangels served an integral role in a business whose main service was the provision of care. Plaintiffs' primary duties "included assisting residents with daily living activities such as dining, bathing, recreational, and housekeeping activities," ECF No. 91-2 at 2, all tasks which were, by Robinson's own admission, essential to running the facility. Robinson agreed that "all the duties the caregivers provided are . . . the core things necessary to take care of [the] patients." ECF No. 91-1 at 82:6–12. Because Plaintiffs' duties align with the exact purpose for which Robinson's business exists, the sixth and final economic reality factor cuts against the viability of the independent contractor defense.

In sum, when viewing the record evidence most favorably to Defendants, the Court concludes that no triable issue of fact exists as to whether the Bocangels were "independent

contractors." Although their employment agreements nominally referred to them as such, their daily employment arrangement decisively and unequivocally proves otherwise. Accordingly, the Court concludes as a matter of law that the Bocangels were not independent contractors for purposes of the FLSA and companion state and local wage and hour claims.

### IV. Remaining allegations

Because this motion concerns the viability of a single, narrow affirmative defense, Plaintiffs wage and hour claims remain unresolved. Plaintiffs urge the Court to conduct an "evidentiary hearing" as to Defendants' liability and damages. ECF No. 91 at 9. However, Plaintiffs do not point this Court to any authority allowing such an "evidentiary hearing" on questions of liability or damages, and certainly as applied to their narrow motion for summary judgment on a single affirmative defense.

That said, the Court recognizes that neither Defendant has participated at all in this litigation for well over one year. Accordingly, the Court will allow the Plaintiffs 28 days to file a motion for default judgment as to Warm Heart, and motions for clerk's entry of default and default judgment as to Robinson, all pursuant to Rule 55 of the Federal Rules of Civil Procedure. The Court forewarns Plaintiffs that failure to file such motions may result in dismissal of the Complaint for want of prosecution.

### V. Conclusion

For the foregoing reasons, Plaintiffs' motion for partial summary judgment is GRANTED. A separate Order follows.

 2/20/2020  
Date

 /s/  
Paula Xinis  
United States District Judge