IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEHONOR BOCANGEL, *et al.*,         *

   Plaintiffs,                         *

 v.                                   *      Civil Action No. 8:16-cv-03989-PX

WARM HEART FAMILY                    *
ASSISTANCE LIVING, INC., *et al.*,   *

   Defendants.                       *
                          ***

## MEMORANDUM OPINION

Pending before the Court in this wage and hour case is Lehonor Bocangel, Flory Bocangel, and Dan Espinal's motion for default judgment against Defendants Warm Heart Family Assistance Living, Inc. ("Warm Heart") and Constance Robinson. ECF No. 108. For the reasons that follow, the motion is granted and judgment is awarded as to all Plaintiffs.

### I.  Procedural Background

This Court previously granted partial summary judgment in Plaintiffs' favor on the narrow question of whether Plaintiffs had worked as "independent contractors" exempt from federal and state labor laws. ECF Nos. 96, 97. The Court concluded that as a matter of law, Plaintiffs were not independent contractors and thus were covered employees under the federal, state and county wage laws. *Id.*

During the pendency of the summary judgment motion, Defendants filed for bankruptcy, triggering an automatic stay in this case. ECF No. 69. After the bankruptcy matter concluded, this Court lifted the stay and counsel for both Defendants moved to withdraw from representation. ECF Nos. 71 & 74. The Court granted the motions to withdraw. ECF No. 76. The Court also forewarned the corporate Defendant, Warm Heart, that it must secure new

counsel or risk default judgment. ECF Nos. 76, 77, 86. As to Robinson, the Court informed her that failure to retain new counsel would result in her proceeding *pro se*. ECF No. 77. Neither Robinson or Warm Heart thereafter retained counsel or participated in this case.

Plaintiffs have now moved for default judgment against both Defendants as to liability and damages. ECF No. 108.

## II. Standard of Review

Federal Rule of Civil Procedure 55 governs default judgments which must be entered "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). The Court may enter default judgment at the plaintiff's request and with notice to the defaulting party. Fed. R. Civ. P. 55(b)(2). Although courts maintain "a strong policy that cases be decided on the merits," *United States v. Schaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993), the Court may exercise its discretion in granting default judgment when the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

When considering the propriety of default judgment, the Court takes as true the well-pleaded factual allegations of the complaint, other than those pertaining to damages. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). The Court applies the pleading standards announced in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), in the context of default judgments. *See Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 544 (D. Md. 2011). A complaint that avers bare legal conclusions or

"naked assertion[s] devoid of further factual enhancement," is insufficient to award default judgment. *Russell v. Railey*, No. DKC 08-2468, 2012 WL 1190972, at *3 (D. Md. Apr. 9, 2012) (quoting *Iqbal*, 556 U.S. at 678); *see also Balt. Line Handling Co.*, 771 F. Supp. 2d at 545 ("The record lacks any specific allegations of fact that 'show' why those conclusions are warranted.").

If the complaint avers sufficient facts to establish liability, the Court next turns to damages. *See Ryan*, 253 F.3d at 780–81. Damages are circumscribed by that which is requested in the complaint. *See* Fed. R. Civ. P. 54(c) ("A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."). The damages request must be supported by evidence introduced either at a hearing or by affidavit or other records. *See id.*; *Lawbaugh,* 359 F. Supp. 2d at 422.

### III.   Analysis

The Plaintiffs seek judgment against Defendants on minimum wage and overtime claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* (2018); the Maryland Wage and Hour Law ("MWHL"), Md. Code Ann., Lab. & Empl., §§ 3-401 *et seq.* (2016); the Maryland Wage Payment Collection Law ("MWPCL"), Md. Code Ann., Lab & Emp., §§ 3-501 *et seq.* (2016); and Montgomery County law, Montgomery Cty. Code §§ 27-67 *et seq*. During the period that Plaintiffs worked for Defendants, the FLSA required that employees receive a minimum hourly wage of $7.25 for all hours worked up to forty hours in a single work week. *See* 29 U.S.C. § 206 (a)(1)(C). The MWHL set a slightly higher rate. *See also* Md. Code Ann., Lab. & Empl. § 3-413(b). Montgomery County law set a minimum hourly wage above that required under federal and state law and therefore governs the dispute at hand.[1] *See*

---

[1] For the applicable time period, Montgomery County law set the minimum hourly wage (and in turn the overtime hourly wage) as follows: $7.25 before October 2014; $8.40 between October 1, 2014 and September 30, 2015; $9.55 between October 1, 2015 and June 30, 2016; and $10.75 between July 1, 2016 and November 18, 2016. *See*

3

Montgomery Cty. Code §§ 27-67 through 27-70.  As for overtime, both the FLSA and MWHL required that the employer pay one and one-half times the regular rate of pay.  29 U.S.C. § 207(a)(1); Md. Code Ann., Lab. & Empl., § 3-415.

### A. Liability

Taking the Complaint facts as true, each Plaintiff worked for Defendants as caretakers at Defendants' nursing care facility.  ECF No. 28 ¶¶ 10-12, 18-20, 27-29.  Both Defendants qualified under the operative statutes as "employers."  Robinson, individually and on behalf of Warm Heart, exercised actual and apparent authority to hire and fire Plaintiffs, directed and supervised their work, and set relevant wage and hour policies.  *Id.* ¶¶ 33-53.[2]

Defendants also failed to pay the proper minimum and overtime wages to each Plaintiff.  Lehonor Bocangel worked for Defendants from 2006 to November 18, 2016, consistently over 40 hours per week.  *Id.* ¶ 56.  Lehonor regularly worked 18 hours per day, seven days a week, for a total of 126 hours every week.  ECF 108-1 ¶ 8.  Her duties included administering medication to patients and assisting them with feeding, personal hygiene, and other adult daily living tasks.  ECF No. 28 ¶ 63.  From 2011 to November 18, 2016, Lehonor was paid a bi-weekly salary of $1,136, or a flat rate of roughly $4.50 per hour.  *Id.* ¶ 55.  Accordingly, Lehonor Bocangel clearly had not been paid the proper minimum or overtime wage.

Flory Bocangel worked in a similar capacity from 2010 to November 18, 2016.  *Id.* ¶¶ 57-58.  She too worked 18 hours per day, seven days a week.  ECF No. 108-2 ¶ 8.  During this

---

Montgomery Cty. Code §§ 27-67 through 27-70; *see also* Editor's Note discussing 2015 Amendments to § 27-70 at montgomerycountymd.gov/humanrights/Resources/Files/Chapter%2027_CountyCode.pdf.

[2] Robinson owns and operates Warm Heart.  ECF No. 28 ¶¶ 42-44.  She oversaw the entirety of Warm Heart's operations, to include patient care, marketing, and management of staff.  In particular, Robinson instructed the Plaintiffs on how to provide patient care, supervised their jobs, and issued mandatory directives.  ECF No. 96; *see also* ECF No. 28 ¶¶ 43-45.  Accordingly, Plaintiffs have demonstrated that Robinson qualifies as an "employer."  *Id.* ¶¶ 44-49.

4

time, Flory was paid a bi-weekly salary of $960 for a flat hourly rate of $3.80 per week. ECF No. 28 ¶¶ 56-57.  Clearly, Flory Bocangel had not been paid a legal minimum or overtime wage.

Daniel Espinal worked for Defendants from 2009 to May 2015, during which time he was paid a bi-weekly salary of $700 and worked consistently over forty hours per week. *Id.* ¶¶ 58-59.  He too assisted Defendants' patients with daily living activities. ECF No. 108-3 ¶¶ 7-8. Espinal worked seven days a week, sixteen hours a day.[3] *Id.* ¶ 8.  Accordingly, his biweekly salary translated into a functional hourly wage of $3.13.

Based on the Complaint, and as supplemented with Plaintiffs' sworn declarations, the Court concludes that Defendants violated the federal, state, and county minimum wage and hour laws.  Simple math demonstrates that each Plaintiff had been paid less than the standard applicable minimum wage, and certainly were not paid at time-and-a-half for hours worked in excess of 40.  Thus, the Court enters judgment on liability for all Plaintiffs against all Defendants.

### B.     Damages

The Court next turns to damages.  Plaintiffs have submitted detailed, sworn declarations which establish that for the many years each Plaintiff worked tirelessly, Defendants never documented the Plaintiffs' wages and always paid them in cash.  Each Plaintiff specifies the yearly salary each was paid and extrapolates from that salary the commensurate actual wage each received.  ECF Nos. 108-2; 108-3; 108-4.  Plaintiffs further itemize the required minimum and overtime wages for the operative time periods that each was deprived. *Id.*  The Court has reviewed the evidence submitted and, aside from those errors expressly noted, otherwise accepts

---

[3] Plaintiff Espinal's declaration stated that he both worked sixteen hours a day and eighteen hours a day (specifically, that he worked between 5 a.m. and 11 p m., or 126 hours per week, seven days a week).  ECF No. 108-3 ¶ 8.  Both cannot be true.  As the burden to establish damages lies with Plaintiffs, the Court will calculate damages for Mr. Espinal based on a sixteen-hour workday. *See also infra* n.4.

Plaintiffs' calculations.[4]

Plaintiffs further request liquidated damages which is available pursuant to the FLSA in an amount equal to unpaid wages. *See* 29 U.S.C. § 216(b). Liquidated damages may be avoided if "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]. . . ." 29 U.S.C. § 260. Defendants have provided no justification whatsoever for failing to comply with the wage and hour laws and indeed have abandoned the litigation outright. Accordingly, the Court will award liquidated damages under the FLSA.

The total awarded for each Plaintiff, based on the credible evidence submitted, is as follows:

---

[4] Plaintiffs appear to have incorrectly stated that the overtime rate beginning October 1, 2016 is $16.23 rather than $16.125. *See* ECF No. 108 at 11. The Court suspects this was a typo because the calculations in Plaintiffs' charts incorporate the correct overtime rate of $16.125. *Id.* at 13-15. Counsel for Plaintiffs also erred as to the 2015 amendments to Section 27-70 of the Montgomery County Code in that the amendments increased the minimum hourly wage to $10.75 beginning on July 1, 2016, not October 1, 2016. Accordingly, Flory and Lehonor Bocangel are entitled to hourly and overtime wages based on the then-county minimum wage of $10.75 for the period of July 1 to October 1, 2016, not $9.55. The Court has adjusted the calculations for those two plaintiffs. As to Espinal's claim for damages, the chart submitted also includes erroneous information. ECF No. 108 at 17. Espinal attests in his sworn declaration that he worked between 5 a m. and 11 p m. seven days per week, which amounts to 126 hours weekly or 18 hours per day. ECF No. 108-3 at 1. But elsewhere, Espinal attests that he "regularly worked 16 hours a day." *Id.* Because plaintiff must establish damages with record evidence, the Court will calculate and award damages to Espinal based on a 16-hour workday, which also is consistent with counsel's calculations in Espinal's chart. *See* ECF No. 108 at 17. Espinal also attested that he had worked 30 weeks between October 1, 2014, and May 1, 2015, but the chart for the same period calculated Espinal as having worked 30.5 weeks. *Compare id. with* ECF No. 108-3 at 2. The Court adjusts the wages to comport with Espinal's declaration and finds that Espinal earned $10,080 in straight time wages and $27,216 in overtime wages. Taking into account these corrections, the Court concludes that Espinal earned a total of $81,825.50 in straight time wages and overtime wages. Subtracting $25,200 from the figure to account for payments received, Espinal is entitled to an award of $56,625.50 for unpaid wages.

| Plaintiff | Straight Wages Earned | Overtime Wages Earned (minus leave taken) | Amount Paid by Defendants | Principal Amount Owed | Final Amount Owed with Liquidated Damages |
|---|---|---|---|---|---|
| Lehonor Bocangel | $53,005 | $169,943.25 | (-$86,620) | = $136.328.25 | $272,656.50 |
| Flory Bocangel | $53,005 | $170,104.50 | (-$73,200) | =$149,909.50 | $299,819.00 |
| Dan Espinal | $22,115 | $59,710.50 | (-$25,200) | =$56,625.50 | $113,251.00 |

**C.     Attorneys' Fees**

Finally, the Plaintiffs seek attorneys' fees and costs which are recoverable under the federal and state wage and hour statutes. *See* FLSA, 29 U.S.C. § 216(b); MWHL, Md. Code Ann., Lab. & Empl. § 3–427(a)(3); MWPCL, Md. Code Ann., Lab. & Empl. § 3–507.2(b). Plaintiffs request, and this Court grants, 14 days from the date of this Opinion and Order to submit a properly supported fee petition. ECF No. 108 at 18. Plaintiffs shall file the fee petition in conformity with this Court's Local Rules. *See* Loc. R. 109.2.b; App'x B.

**IV.     Conclusion**

Based on the foregoing, Plaintiffs' motion for Default Judgment is granted. Judgment in awarded for each Plaintiff for back wages and liquidated damages. Plaintiffs shall be granted 14 days to file their petition for attorneys' fees and costs. A separate Order follows.

| | |
|---|---|
| 1/12/2021 | /s/ |
| Date | Paula Xinis |
| | United States District Judge |